## TAUSSIG v. ST. LOUIS VALLEY TRANSFER RY.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1904.)

### No. 1,059.

1. RAILROADS—RIGHT OF EMINENT DOMAIN—ILLINOIS STATUTE.

    Hurd's Rev. St. Ill. 1889, c. 114, § 49, which authorizes any railroad company of the state having a terminus on any navigable river bordering on the state to own and operate water craft for the carriage across the river of passengers or property transported or to be transported over its lines, but provides that "no right shall exist under this act to condemn any real estate for landing for such water craft, or for any other purpose," does not deprive a railroad company organized under the general provisions of such chapter of the right given it thereby to condemn real estate for right of way and terminal purposes merely because its line terminates at the Mississippi river, and its engineer states that the purpose of the line is to there construct an incline and operate a ferry; there being nothing in the charter to show any corporate purpose to operate under said section 49, nor any evidence to show such an intention.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

The facts are stated in the opinion of the court.

Charles W. Thomas, for plaintiff in error.

W. S. Forman and L. D. Turner, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge. The defendant in error, the St. Louis Valley Transfer Railway, is a corporation organized under the laws of the State of Illinois, authorized to construct, maintain, and operate, among other lines, a line of railroad from a point near the intersection of the Waterloo and East Carondelet Turnpike Road with the St. Louis Valley Railway, in a westerly direction to the Mississippi River. Also a branch beginning on Lot 23 of Prairie due Pont Commons, and running in a northwesterly direction to a point near Dupo on the St. Louis Valley Railway.

The case before us is a condemnation suit brought originally in the County Court of St. Clair County, Illinois, against the plaintiff in error, and others, all of them citizens of Missouri, and removed by them into the Circuit Court of the United States, for the Southern District of Illinois. The purpose of the case is to condemn a right of way across lands, belonging to the plaintiff in error and the others, and embraced within the survey and location of the road as authorized by the articles of its incorporation. The lands sought to be taken are in several lots, one bounding on the Mississippi River, and the others lying back from the river, and separated from the first by a public road.

It is not questioned that but for the testimony of the railroad's engineer, in the hearing in the Circuit Court, the railway company would be entitled to the decree of condemnation asked. The company is organized under chapter 114 of Hurd's Revised Statutes of Illinois of 1899, section 18 of which reads as follows:

"If any such corporation shall be unable to agree with the owner for the purchase of any real estate required for the purposes of its incorporation, or

the transaction of its business, or for its depots, station buildings, machine and repair shops, or for right of way or any other lawful purpose connected with or necessary to the building, operating or running of said road, such corporation may acquire such title in the manner that may be now or hereafter provided for by any law of eminent domain."

The power of eminent domain provided applies, unquestionably, to lands lying on navigable waters, to which riparian rights may attach, as well as to lands lying away from such streams.

But on the hearing in the Circuit Court, one Jacobs, the railroad's engineer, was called by the company as a witness, who, after identifying a plat of the plan and place of location of the road, on cross-examination testified, as the bill of exceptions puts it, that "the purpose of this whole railroad as located by me, is to go to the Mississippi River and construct an incline and operate a ferry." It is upon this evidence, standing entirely alone, that plaintiff in error grounds his contention that the railway company is not entitled to an exercise of the right of eminent domain. The argument is that an act of the General Assembly, passed in 1877, to facilitate the carriage and transfer of passengers and property by railroad companies, takes away, under the circumstances stated, what would otherwise be the railway's rights. The portion of the act relied on, is as follows:

"That all railroad companies incorporated under the laws of this state, having a terminus upon any navigable river bordering on this State, shall have power to own for their own use any water craft necessary in carrying across such river any cars, property or passengers transported over their lines or transported over any railroad terminating on the opposite side of such river to be transported over their lines: Provided, that no right shall exist under this act to condemn any real estate for landing for such water craft, or for any other purpose. And this act shall only apply to such railroad companies as own the landing for such water craft: Provided also, that nothing in this act shall be held to impair any right or privilege granted any ferry company incorporated under the laws of this state; and that all the powers and rights herein granted said railroad companies shall be subject to whatever rights and privileges may have heretofore been granted to any ferry company in this state: and that nothing in this act shall prevent said railroad companies from being subject, in the use of such water craft to all laws of the state regulating ferries now in force or hereafter to be in force: and Provided further, that nothing in this act shall be held or constituted to authorize any railroad or railway company doing business under any charter granted by this State to consolidate with any railroad or railway company out of this state, so as to form one continuous line of railroad, or otherwise to alter, modify or repeal any provision of any such charter granted by this state: or to impair the rights of this state as now reserved to it in any such charter." Hurd's Rev. St. 1899, c. 114, § 49.

We cannot concur in this view. The testimony of the engineer must be taken as simply his view of the enterprise as a physical entity. It may very well have been true, that the enterprise, as a physical entity, contemplated a railroad to the river, to be operated in connection with a ferry across the river. But this would not necessarily, or even probably, delineate the corporate purposes of the railway company. It may have been intended that the railway thus terminating at the river should connect with a ferry already established—the ferry of some other road—or an independent ferry, or a ferry to be operated by a separate company to be organized by the same parties under a ferry charter. Nothing in the law, so far as we can see, prohibits any

such arrangement, and nothing in the evidence discloses that there was anything more in mind than to carry out some such arrangement. The corporate purpose of the railroad company is to be judged, not by what one of its engineers may have remarked, but by the corporate purposes as shown in its charter; and there is no corporate purpose thus disclosed that shows to us that the railroad is to operate under the act of 1877.

The judgment of the Circuit Court will be affirmed.